CHEYENNE–ARAPAHO TRIBES OF
OKLAHOMA, Appellant,

v.

STATE OF OKLAHOMA, et
al., Appellees.

No. 82–1169.

United States Court of Appeals,
Tenth Circuit.

June 24, 1982.

Jeanne S. Whiteing and Yvonne T. Knight of the Native American Rights Fund, Boulder, Colo., for appellant.

Jan Eric Cartwright, Atty. Gen. of Okl., and Neal Leader, Asst. Atty. Gen., Deputy Chief, Civ. Div., Oklahoma City, Okl., for appellees.

Before McWILLIAMS, LOGAN and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

The dispute is over the meaning and effect of the court's decision in *Cheyenne-Arapaho Tribes v. State of Oklahoma*, 10 Cir., 618 F.2d 665. The Tribes sought to enjoin the State from exercising jurisdiction over Indian hunting and fishing on land within the reservation. The trial court held that the state hunting and fishing laws applied to Indians in Indian country under the Assimilative Crimes Act. We reversed and remanded for further proceedings in the light of our opinion.

The Tribes do not contest the disestablishment of the reservation. Id. at 667. After that occurred, the lands of the disestablished reservation came within one of three classes, Id. at 667: (1) land allotted to individual Indians, (2) land held in trust by the United States for the Indians, and (3) non-Indian *ceded land* publicly and privately owned. We rejected the claim of the State that the Assimilative Crimes Act authorized the State to control Indian hunting and fishing in Indian country, classes (1) and (2) above, and said, Id. at 669:

"We conclude that state hunting and fishing laws do not apply, directly or indirectly, to hunting and fishing by members of the Cheyenne-Arapaho Tribes on land held as Indian allotments and on land held in trust by the United States for the Tribes."

No petition for rehearing or application for certiorari was filed. On remand the district court entered judgment in accordance with our conclusion noted above.

The Tribes appeal on the ground that the district court failed to provide relief for them with regard to hunting and fishing on

*ceded land.* The contention is that our opinion upheld a dual control of hunting and fishing on *ceded land.* We said, Id. at 667:

> "They [the Tribes] concede that hunting and fishing on non-Indian lands located within the 1869 reservation are not subject to exclusive Tribal control but rather subject to a system of dual regulation. It is enough to note that a number of decisions recognize dual control when needed to support conservation measures." (Citing *Puyallup Tribe v. Department of Game of Washington,* 391 U.S. 392, 88 S.Ct. 1725, 20 L.Ed.2d 2689.)

Our reference to dual control was a recognition that dual control had been permitted in certain situations. It was not a holding that dual control was proper in the case before us. We did not know then, and do not know now, the pertinent facts. There are two types of *ceded land*: (1) privately owned, and (2) publicly owned. Fishing and hunting on privately owned land depends on access allowed by the owner. On public lands the question is denial of the Indian right. The record before us shows nothing as to either the grant or the denial. Further, the record contains nothing with reference to the need, or lack of need, for conservation measures.

The decisions in *Puyallup Tribe v. Department of Game of Washington,* 391 U.S. 392, 88 S.Ct. 1725, 20 L.Ed.2d 2689, 414 U.S. 44, 94 S.Ct. 330, 38 L.Ed.2d 254 and *United States v. State of Michigan,* 6 Cir., 653 F.2d 277, cert. denied —— U.S. ——, 102 S.Ct. 971, 71 L.Ed.2d 110, concern treaty rights of Indians to hunt and fish. We have no treaty problem here. This case is more like *De Coteau v. District Court,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300, which considered an 1891 termination act.

*Menominee Tribe of Indians v. United States,* 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697; *Kimball v. Callahan,* 9 Cir., 493 F.2d 564, cert. denied 419 U.S. 1019, 95 S.Ct. 491, 42 L.Ed.2d 292; and *Kimball v. Callahan,* 9 Cir., 590 F.2d 768, cert. denied 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33, involved 1954 termination acts. In our

original opinion, 618 F.2d at 668, we noted the congressional policy change from assimilation to self-determination and said:

> "Allotments were the first step in assimilation. Termination is the last step and has not been reached so far as the Cheyenne-Arapaho Tribes are concerned." (Citing authorities.)

We adhere to that statement.

Determination of dual control over hunting and fishing on *ceded lands* must await a dispute presenting specific facts. We decline to enter an advisory opinion. The district court judgment of January 5, 1982, is affirmed.